Mr. Dominguez, whenever you're ready. Good morning, Your Honors. Anthony Dominguez, in addition to Co-Counsel Stephen Allen, on behalf of petitioners. May it please the Court. 8 CFR 316.2b sets the standard overview in naturalization proceedings to determine whether or not an alien was lawfully admitted for permanent residence. This standard states that an adjustment was a person was lawfully admitted for permanent residence when their adjustment was, quote, in accordance with the immigration laws at that time. This standard, in combination with this Court's standard of review and framework articulated in Savory v. U.S. Attorney General, states that both agencies and courts may review de novo in naturalization proceedings whether an applicant's adjustment was, quote, in accordance with the immigration laws in effect at that time. However, let me start with a basic question that's not this case, okay? So it's a different hypothetical. If someone's status gets adjusted to legal permanent residence by a pure clerical mistake, pure clerical mistake, the person was never eligible, you know, let's say that they hadn't been in the country for the requisite amount of time, they filed three days after they arrived and it was just granted by mistake. Is that determination that that person could have gotten adjustment show that it was done in accordance with the immigration law at the time? No, Your Honor. Okay. That is the classic example of the Savory case from the 11th Circuit in which the petitioner in that case was adjusted erroneously with a controlled substance cocaine conviction, something that was clearly and unambiguously prohibited under the law at this time. This further, this type of mistake cases versus fraud in the adjustment cases outlining that framework that was defined in Savory adopted the BIA standard for what is lawfully admitted for permanent residence for a matter of co-limit tangi. Multiple circuit courts have since adopted this same framework including Savory and from the 2nd Circuit de la Rosa versus U.S. Department of Homeland Security. Therefore, Your Honor, based on the plain language of this regulation which states someone is lawfully admitted for permanent residence when they are adjusted, quote, in accordance with the immigration laws in effect at that time, does not allow any determination as to the lawfulness of the law of the immigration law in effect at that time. Under the Cuban Adjustment Act that was in place at the time that her status was adjusted, what were the requirements for adjustment under that act at that time? Correct, Your Honor. The standard requirements for adjustment is that a Cuban must be present for a year in the United States. She met that. Correct. She must have been paroled or otherwise admitted in the United States. Okay, we'll get back to that one in a second. Which she was paroled. She made, she met that, she met that requirement. And one of the last requirements is that you are admissible to the United States. Okay, that's the one that I want to talk to you about because initially the immigration judge found her to be excludable, right, initially. Not under a fraud statute. I know, I know, I know. Okay, correct. Found her to be excludable initially in the initial immigration proceedings. That's correct. Right? And that, that ruling was never set aside or changed, right? Correct, Your Honor. And if I may, under that time, under that framework, pre-97, pre-era, era, era, a Cuban could receive an exclusion order and they were still eligible for adjustment of status. So notwithstanding the exclusion order, legacy INS is still has the, and that's the same today, an arriving alien Cuban who receives a deportation order can still go before the administrative USCIS, the new legacy INS, and still adjust status to today. So nothing of the immigration judge ordering her excluded prevented her from being adjusted status. Furthermore, the imp neither DHS in those removal proceedings, nor the immigration judge ordered her excluded, or ordered her excluded under the fraud provision. Those are two key differences based on the cases of Kurt and your Mary, which the government sites as a authority that this has been fraud all along, even when they was clearly not committed at the time to not consider this fraud. Was there any, in the record, any discussion of the fact that she might have, that she did committed a fraud in connection with obtaining an other benefit as opposed to fraud in presenting herself to the admin, to the INS at the border? In regards to that point, if I may respond to your points in two points. Number one, the district court found that there was a policy to admit Cuban nationals in similarly situated as petitioner, and they did not consider that act of the TWV program when they came in as Cubans and were paroled as Cubans thereafter. Legacy INS did not consider that to be fraud. The district court held that this policy existed as a matter of fact. The government did not contend that this policy- Didn't they decide that on the basis that there was no fraud when she presented herself to the U.S. officials because she was presenting herself as a Cuban, with her Cuban passport? That's correct, your honor. Now, in addition to the fact that district court found the policy- But there was a fraud prior to that. That's correct, however- In connection with getting the ticket and participating in the program. Yes, and while that, under the framework, a court or an agency may very well determine that situation to be fraud now. For instance, in CURT, this court upheld under the substantial evidence test a factual finding that someone in that situation, TWV, was in fact inadmissible for fraud. However, under the immigration laws in effect at that time, we know as a matter of fact, Legacy INS did not consider these actions to be fraud. Well that then brings up a point of general administrative law. Correct, your honor. What is that sort of de facto policy mean when a court is doing de novo review, as you initially said, on a naturalization petition? In response to your question, I'd like to delineate it again. The de novo review is on the naturalization application, however, the review as to whether she was lawfully admitted for permanent residence, it's not a readjustment in today's law. It's whether she was lawfully adjusted under the laws in effect at that time. But it's de novo. That's correct, but there's, your honor. It can't be de novo partly, it's got to be de novo fully. It's petitioner's contention that it is de novo of the application, but when we look at the definition of what... Let me flip the facts and show you why I have at least a partial concern with what you're saying. Assume that the INS's policy were completely different, and that instead of granting adjustment of status to 361 out of 370 Cuban nationals at the time, they were denying it because they believe that this sort of conduct constituted fraud for another benefit. Correct. Could a court on de novo review of a naturalization petition disagree with the INS, the former INS, and say, that's not fraud, and we're not bound by the de facto policy of the former immigration service years ago? Your honor, if they were denied residency based on fraud, I don't think that hypothetical situation would ever... That review would never be able to take place because once... You could deny... Well, I guess if it arose in an inadmissibility context, but not an adjustment context, it might. The petitioner would be free to petition in district court for statutory eligibility review as to whether that conduct fit the statute at that time, but if she was denied residency for that reason, there would be no review retrospectively as to the naturalization as to that policy. Your honors, it's petitioner's contention that she should be naturalized for two reasons. Number one, at the time of her adjustment and 10 years thereafter, legacy INS had a policy to adjust Cuban applicants for adjustment of status similarly situated as petitioner. As I said, the district court found this to be a policy as a matter of fact, the government never contested this within 28 days under federal rule of civil procedure 52B. To that extent, accordingly, the government has waived and forfeited any objection as to the existence of a policy at this time. Furthermore, it was in accordance with this specific policy that legacy INS adjusted Ms. Petitioner's status to lawful permanent resident. We know this adjustment was not fraudulent because she fully disclosed her use of the TWOV program. Well, but that's the point. Doesn't this all come down to whether or not as a matter of law, getting into and using the travel without visa program initially with a false passport constitutes fraudulent conduct even though when you arrive in the United States, you disclose who you are? Respectfully, although no, your honor, because the standard of review, because what it means to be have been lawfully admitted for permanent residence, it means having been adjusted in accordance with the immigration laws at that time. You're saying that the policy was therefore unlawful in the past. You can't review the lawfulness of the law under which they were adjusted. The review allows for whether they were adjusted in accordance with the laws in effect. And if the law allowed for that adjustment past, we shouldn't, but what if, what if the government was wrong? But it was an intentional, your honor. And the standard of review is what? It was an intentional, purposeful adjustment. The standard of review. What does that mean? The standard of review. If it's de novo, why does the government's intent matter? Because the standard established by this court in Savory versus United States Attorney General states that the framework for determining whether someone was lawfully admitted for permanent residence means it's either they committed fraud if they weren't, which we know this was not fraud in the adjustment context. Number two, or they were not admitted for permanent residence if they were admitted by mistake. This is the mistake example. That statutory framework defined in the plain language is CFR 316.2B in combination with that framework of Savory leaves room for one logical conclusion. If it was not fraud in the adjustment, if it was not a mistake, which we know contesting this policy to be a mistake would be a disingenuous mischaracterization of the record as the district court found. If it is not either of those two things, it is a lawful adjustment. Why wasn't it fraud in terms of the other benefit? I'm still kind of, that seems amiss. Yes, your honor. At the time of the case law, there was no precedent decision which defined it to be another benefit. Black's Law Dictionary. But there was the language, other benefit. There was the language, however, your honor. And there was no question but that she got another benefit, right? We would still contend that TDOV is not another benefit, but we don't believe that's a question this court even has to answer in this case. Specifically there was... Why can't this case be looked at as though she committed fraud, but the INS at the time said, because of the Cuban policy, we're not going to pay attention to that? We believe that is part of the issue here. Then that gets back to whether there was really a policy or whether this was just an understanding. A policy is if it had been written in a regulation, but it wasn't written in a regulation. Your honor, in the 11th Circuit, in Gonzales v. Reno, held that informal policies developed through agency adjudication is due deference under this court. An informal policy... But that gets back to the, at least for me, the problem. You're asking for de novo review and now you're telling us to give deference. So how do you square those two things? Yes, your honor. If you're supposed to do de novo review, how do you give deference? And that deference is a two-way sword because in one case the deference may help an applicant and in one case the deference might hurt an applicant. So how do you parse that? Yes, your honor. Again, we believe that de novo review is of the naturalization application, but the specific standard of review, to review if someone was lawfully admitted for permanent residence, that is only looking at whether it was accordance with the adjustment of the time. Take it for instance if... Because that has some preclusive effect? Yes, because it was an intention, the government intended to adjust these people. If the courts... If new agencies or new administrations can go back and say, oh, never mind, that past policy was... We don't believe that policy was legal. For instance, let's say they go back and say everyone admitted under the Reagan adjustments those amnesty problems. We believe that policy was legal. Executive, we just write an opinion, that policy was illegal. Therefore, anyone adjusted under that policy was unlawfully adjusted for permanent residence status, therefore can never become a citizen because they weren't lawfully admitted. That brings up grave retroactivity concerns and problems within separation of powers that new administrations and new courts will be retroactively deciding past policies, whether they were unlawful or lawful when the law at the time was settled. In this case, the statute, we believe the plain language of the statute did not prohibit this action. Furthermore, the existence of the case law at the time, matter of DL and AM, stated the general rule which INS officers applied in this case. The district court, they decided not to apply the exception of Sherdell, and that was reasonable as the district court explained in its opinion why Sherdell doesn't apply in this case. If the cases are determining the meaning of the statute, doesn't that mean... It doesn't matter that they're after. Correct. A court deciding a statute unambiguously means this has retroactive effect. We would decide that. However, this court has never decided that. This court and Curt merely upheld under the substantial evidence test a factual finding of an admissibility for that fraud under the TBLBV program. That would have been the same situation in Curt as if the immigration judge in this case had said, all right, you're excluded under fraud. And then she appealed that all the way up, and that question was reviewed under the substantial evidence test. The court has never addressed this. There's no precedent decision, even from this court, saying unambiguously this statute is ultra-virus, or the policy doesn't... This is fraud under the statute. Okay, Mr. Dominguez, thank you very much. Thank you. Your time for rebuttal. Mr. Evans. Good morning. May it please the court, I'm... Mr. Evans, is the government still of the opinion that 360-something immigration officers just simply made identical mistakes over a short period of time in adjusting the status of Cuban nationals who had engaged in the same conduct? Yes, your honor, we're still of the opinion that mistakes were made, many mistakes. 361 out of 370. Your honor, I'd like to look at those statistics a little more closely. I don't want to talk about what they mean. I want to talk about the government's position about whether or not those were mistakes, or a government policy, as Judge Walker suggested, given the views of different administrations towards the whole Cuban issue. I will tell you this, and I'm not saying that this affects the legal analysis, but for the government to say, in court, that it was just a mistake for 361 immigration officers to approve 370 applications involving the same conduct strains credulity. And I think the district court got it exactly right, that it is offensive for the government to say that. Much better for the government, I speak only for myself, to own up to what was happening and say, listen, for these other reasons, it doesn't matter. Ms. Bueno is wrong. She can't get her citizenship for these reasons. But you know, sometimes statistics say something, and this looks like a case where they're screaming something. Your honor, may I respond? Of course. We know that in 102 of these cases, waiver applications were submitted. We know that's 30% of the 370 applications that were identified here. We know that waiver, these are waiver of inadmissibility for fraud, we know that they were approved in 65 of those cases. We know that there were 423 applications by these 370 people. That shows that there were 53 repetitive applications where people must have been denied once and they came back. They came back again because on a second or third try, they were able to find an adjudicator who missed this fraud. And that's possible here, your honor. We're looking at a 10-year period. We're looking at 423 applications. If you deduct the minors, that takes us down to about 346 applicants. Let me put it this way. If there is a policy, if we should, looking at all of this, come to a different conclusion on that question, is that the end of your case or do you have an argument that lawfully admitted at a later time? If there was a pursuant to a policy and there were automatic waivers and people were coming in pursuant to a policy using the TWOV program, then the question is, is the government capable now of making an argument, a straight-faced argument that while you may have been lawfully because there was the, you know, the other benefit prong that was available and we should have, we want to change the situation, change the policy or change, look at it differently than we did then. Your honor, the government, I don't believe, can take issue with what the district court found. Our position is that what she found did not amount to a statement of law as it existed at the time that Ms. Bueno adjusted. I think the district judge . . . So you're saying that it was sort of an informal understanding at most? Accepting the policy argument that it really wasn't a policy, it was an informal understanding and officers were exercising discretion in certain ways, that was erroneous? It was erroneous, your honor, and whatever it was, it was not law. It was never written down. The appellant relies only on statistics to claim that there was a policy here and cites no authority for the proposition that statistics by themselves can show law. There's no reference to precedent, no reference to regulation, no reference to memorandum by the agency setting out some kind of practice. We've got to write an opinion one way or another in this case and there isn't much out there in the circuit. I have this question for you to try to figure out the limits of your position as well as Mr. Dominguez's. If the government had set out, maybe not in a regulation but through some sort of an opinion letter or some other formal memorandum that it did not consider conduct like that of Ms. Bueno to be fraud in connection with obtaining another benefit, what effect would that have in a case like this one? That would have a dramatic effect here, your honor, because then there would be some basis to say that the adjudicators were actually implementing what they believed to be the law at the time, but that's not what happened here. I would distinguish the Gonzales against Reno case cited by my friend, footnote 15 of that case, actually refers to the memoranda that memorialized the agency decision in that case. We have nothing like that here. In fact, we have a deposition from Paul Bueno who said that there was no policy at the time. The record does, it simply doesn't support the existence of law at the time to which this court or Judge Williams or USCIS in 2013 and 14 owed any deference. The fact that . . . One of the facts were before the judge who admitted the person and when all of the facts are there and that particular individual is admitted, why isn't that a lawful admission? Well, we regard it as . . . Why can't you revisit it? Well, as we know, your honor, citizenship is, it's a great benefit, and the Supreme Court has recognized that it's proper to go back and look at whether or not the individual was substantively lawfully admitted, and so even if an examiner made the mistake of giving someone the considerable benefit of lawful permanent resident, that doesn't mean that they, therefore, are able to completely set aside and ignore revisiting that question. What is the logic of that, though? I mean, isn't the logic, if you're right, that you can turn down the naturalization based upon that, can't you go back and undo the lawful admission, and then the person's deportable? I mean, how do you . . . I don't understand how you can have it one way and not the other. Well, your honor, at this point, there was a five-year statute of limitations under Section 1256 of 8 U.S.C. that now precludes rescinding her status. Now, that is some protection for her, but that's all she can look to. She cannot say, well, government, you made a mistake in 96, and you're bound by that mistake now. There's simply no basis to say that she could rely on that mistake, and it's quite clear. There's no estoppel applicable to the government in this situation, because there's no evidence of affirmative misconduct, and generally, the courts have no equitable authority when it comes to citizenship. I think you're exactly right about the estoppel point, but is estoppel different from preclusive effect, or are they one and the same, or are they overlapping concepts? Well, I think that . . . In other words, there could be an argument, I don't know if it would be successful or not, that a prior adjudicative determination, although it may not estop the government in traditional estoppel terms, may have some preclusive effect as against the government with regards to that same person in later proceedings. I don't know how that plays out, but that's my question to you. Your Honor, we reject that categorically, because this is a new proceeding. This is someone who is seeking citizenship, and the qualifications, the requirements that have to be met in order to attain that are clear. And you cannot simply import an adjudication made in the context of granting lawful permanent residence into a citizenship determination. The district court correctly recognized that her review was de novo, and she said that USCIS's review needed to be de novo as well, and it was. And CIS and Judge Williams both properly focused on the other benefit part of the fraud provision, and consistent with precedent, particularly Curt, the unpublished decision of this court, and also the First Circuit decision in Your Mary, found that admission or access to the transit without visa program is an other benefit. It's pursuant to another provision of the Immigration and Nationality Act, and therefore when Ms. Bueno presented a fraudulent passport and a misleading ticket and intended to remain in the United States, she gained a benefit, fraudulently or through misrepresentation, and that clearly required a waiver if she was going to be lawfully, substantively lawfully admitted to permanent residence, and that didn't happen. The lack of a waiver in this case, unlike 56 other situations where people did apply and receive waivers, she did not follow that procedure, and therefore her permanent residence is not substantively lawful. Can I ask you, what was, at the time, what was the standard for, if there was a published standard for getting that waiver if you applied? What factors were considered? Well, the statute itself, the waiver is set out, it's cross-referenced in the fraud admissibility provision, and the cross-reference is to 8 U.S.C. 1182I. Has it remained, has that provision remained the same, or has it changed like other parts of the Immigration Code? Well, it's always a little uncertain to guarantee that there's been no change, but I don't believe it has changed, Your Honor. That fraud waiver's been around for a long time, and to be candid, that fraud waiver requires extreme hardship to a qualifying relative, and the qualifying relative is a spouse or your parents, who have to be citizens or permanent residents themselves. I'm familiar with that subsection, because we get some appeals with regards to that issue, which is generally non-reviewable. Were there any other ways that you could get that waiver now or at the time, or was it just a hardship provision? I believe it's just the hardship provision, Your Honor. So, as I mentioned, I think that the inability to rescind lawful permanent resident status is at this point appellant's solace in this unfortunate situation. We would say, as well, that the fraud provision in and of itself, as well as references to accessing the Trove program fraudulently in the early decisions of Kavazagian and Schardell itself, were some indication of how the law understood appellant's action in this case. So, for these reasons, we believe that the judgment of the district court should be affirmed. If there are no other questions . . . All right. Thank you very much. Thank you very much, Your Honor. Thank you, Your Honor. Briefly to respond to my colleague, specifically into their contentions against the existence of a policy at the court below, again, Petitioner would reiterate the stance that this was found unequivocally by the district court to exist, and this was a matter of fact in the record that the government did not contest at that time and cannot contest our results now. When they had a chance to proffer their own calculations regarding the discovery results, they entirely ignored to, simply stating that this was a mistake. As the district court found, we know that Ms. Bueno was not adjusted pursuant to a mistake case. Ms. Bueno and the petitioner in this case, along with hundreds of other Cubans, were purposefully adjusted under the INS policy that existed at the time. What you have to convince us of, I think, is that an informal application of the law gets some deference, if you call it, in the future. What's the best case? The best case of that is this court's case in Gonzalez v. Reno, Your Honor. In that case, the INS developed a policy through adjudication in the single instance of specifically the Elian Gonzalez case. The policy that they developed for that case through an informal adjudication, although they write memos, was developed just there in response to the Elian Gonzalez case. This court specifically held that deference was still due because there was no statutory provision or any authority of law that directly contradicted that. At the time of her adjustment, no authority held that this use of the TDOV program was another benefit. Legacy INS . . . But nobody had addressed it. Well, Your Honor, the definition of lawful in Black's Law Dictionary is what is not prohibited. It is not what is clearly spelled out what you can do. I believe that that runs, coincides with the principles of our free society here, in that what is not prohibited is lawful. We don't have to . . . But no one had addressed the question of what was prohibited or what was lawful. It was just an open question at the time. Well, the general rule, Your Honor, was matter of DL, which held . . . the BIA general rule within the agency held that fraud had to be made upon a government agent. The very narrow exception to that general rule was matter of Chardelle. And we know that in this case, Legacy INS clearly believed that the small exception of matter of Chardelle did not apply to this class of Cuban applicants. If I may conclude briefly, Your Honor, again, we believe the plain language of 8 CFR 316.2, in addition to this court standard articulated in Savory v. U.S. Attorney General, allows both the agency and the court to review de novo whether a person's adjustment was in accordance with the immigration laws at that time. It does not allow this court to review the lawfulness of the law in effect at that time or otherwise review the lawfulness of the policy under which petitioner was adjusted at that time. All right. Thank you very much, Mr. Mingus. Thank you. Thank you both.